UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

VIORICA MALANCEA,
Individually and on Behalf of All Others
Similarly Situated,

        Plaintiff,

v.

MZL HOME CARE AGENCY LLC,

        Defendant.

Case No.: 1:18-cv-00732-CBA-CLP

**DEFENDANT'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS' MOTION FOR
CONDITIONAL CERTIFICATION AND COURT-FACILITATED NOTICE**

FORDHARRISON LLP
Philip K. Davidoff
Jeffrey Douglas
60 East 42nd Street, 51st Floor
New York, NY 10165
(212) 453-5900
(212) 453-5959 (facsimile)
pdavidoff@fordharrison.com
jdouglas@fordharrison.com
Attorneys for Defendant

Defendant MZL Home Care Agency LLC ("Defendant" or "MZL") submits this Memorandum of Law and Declaration of Philip K. Davidoff ("Davidoff Decl.") with accompanying exhibits in opposition to Plaintiff Viorica Malancea's ("Plaintiff" or "Malancea") Motion for Conditional Certification.  As demonstrated below, MZL submits that this case is manifestly ill-suited for collective action treatment under the Fair Labor Standards Act ("FLSA").[1]

## I.   PRELIMINARY STATEMENT

Conditional Certification must be denied for three (3) distinct legal reasons, each one of which demonstrates that MZL's Home Health Aides ("HHAs") are not "similarly situated" so as to pursue collective action under FLSA § 216.

- *First*, the FLSA's Companionship Exemption, which Defendant submits was in effect until October 13, 2015, requires a determination based on a highly individualized assessment of the facts underlying the HHAs' employment circumstances.

- *Second,* MZL's decision to begin paying overtime premiums under the FLSA effective October 13, 2015, pursuant to the terms of its Collective Bargaining Agreement with Plaintiff's union, Local 2013 of the United Food and Commercial Workers ("CBA"), manifestly was made in good faith and does not constitute a willful violation of the FLSA, thus warranting a two (2) year, not a three (3) year, statute of limitations period. Accordingly, Plaintiff's FLSA "collective" claims, which were first asserted in February 2018, are time barred insofar as her employment with MZL ended in August 2015.  In fact, at all times relevant to  Plaintiff's FLSA claims (*i.e.* until August 2015), the Department of

---

[1] Plaintiff's motion for conditional certification applies solely to her FLSA claims.  To date, Plaintiff has not moved for certification of her New York Labor Law claims pursuant to Fed. R. Civ. P. 23.  Therefore, Defendant contends that any claims related to her New York Labor Law allegations are inappropriate for consideration for purposes of this motion.

1

Labor's Final Rule effectively eliminating the Companionship Exemption was *vacated*—only after her employment ended did the D.C. Circuit overturn the *vacatur*.

- *Third*, to the extent MZL paid the straight time rate for in-service training time, MZL made such payments pursuant to the terms of its CBA (Art. VII, Par. E), which does not constitute a willful violation, thus also warranting a two (2) year, instead of three (3) year, statute of limitations period.

For these reasons--both independently and cumulatively—neither Malancea's claims, nor any other of MZL's HHAs' (noticeably none of whom have joined this action or provided declarations) claims may be subject to collective action treatment. Therefore, the Court must deny Plaintiff's motion for conditional certification.

## II.   BACKGROUND FACTS

### A.   MZL

MZL is a family-owned business founded in 1998 to provide short-term and long-term services including personalized care. Such services are provided by, *inter alia*, its HHAs pursuant to individually tailored client "plans of care" created by MZL's nursing team. *See* Davidoff Decl. Exs. A-C.

To develop a client specific "plan of care," MZL sends a registered nurse ("RN") to the client's residence to assess his or her individual health and service needs. The RN prepares an evaluation in which s/he documents the individual's specific health and service needs. *Id.* Using these reports as guides, the RN creates an individual, client-specific "plan of care." *Id.* The plan of care, a copy of which is maintained in the client's home, describes the client's condition and any significant health issues and details the level of care the HHA must provide to ensure that the

client receives essential personal care and is provided a clean, safe and healthy living environment. *Id.* This frequently includes essential homemaking and housekeeping tasks. *Id.*

The level and nature of the care contained in the Plan of Care depends on many factors including, but not limited to: (i) the client's condition and needs; (2) the number of authorized hours; (iii) the size, characteristics and condition of the client's residence; and (iv) whether the client lives with family members or others. Every item on the client's plan of care, *by definition*, is unique and directly related to his/her care. *Id.* Since no two clients are the same, no two client plans of care are the same. *See Id*. Moreover, the RN may make appropriate modifications to the client's Plan of Care depending on the client's changing needs. *See Id.*

Once the client's plan of care is written, MZL requires its HHAs and the client's family members, if any, to review and understand it. As Plaintiff acknowledges, HHAs are required at all times to provide care strictly in accordance with the plan of care. *Id.* HHAs are neither instructed *nor permitted* by MZL to perform tasks not included in the client's plan of care, such as "dangerous cleaning projects" at the client's residence or services unrelated to the care of the client.

### B.    Malancea's FLSA Allegations

In her Complaint, Malancea alleges that she worked a total of two (2) hours of overtime for which she was not paid.[2] In paragraph 10 of her Complaint, Plaintiff alleges that she occasionally worked more than 40 hours per week. In support of that allegation, she contends that during the week of April 25, 2015 to May 1, 2015, her pay stub demonstrates that she worked 42 hours, "yet was underpaid for the 2 overtime hours, receiving from Defendant only $10.00 instead of $15.00 mandated by state and federal law." *See* Complaint ¶ 21. In fact, based on Malancea's pay stubs, this was the only week throughout her entire employment in which she worked more

---

[2] On July 5, 2018, Defendant served an Offer of Judgment pursuant to Fed. R. Civ. P. 68 on Plaintiff offering her full relief for her FLSA claims.

3

than forty (40) hours per week and this involved so called "in-service" training, which for two (2) reasons was paid at the "straight time" rate. *See* Davidoff Decl. Ex. D, (Malancea's pay stubs for her employment with MZL demonstrate that this entire federal litigation is premised on two (2) hours of time worked). First, during this week, MZL relied on the fact that the United States District Court for the District of Columbia *Home Care Ass'n of Am. v. Weil*, 76 F. Supp. 3d 138 (D.D.C. 2014) had *vacated* the U.S. Department of Labor's Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454 ("Final Rule"), which was planned to effectively eliminated the Companionship Exemption. Thus at the time of Plaintiff's employment, there was no federal requirement that Plaintiff be paid overtime compensation.

Second, MZL's CBA with Plaintiff's Union directed that in-service training be paid at the straight time rate. Therefore, MZL had two legitimate, contemporaneous reasons for paying in-service training at the straight time rate. Plaintiff's Complaint notably lacks any other allegations as to FLSA overtime violations. *See generally* Complaint.

In addition to the scarcity of FLSA allegations in her Complaint, the facts she does proffer to attempt to establish that there were similarly situated individuals for her motion for conditionally certification are equally unavailing. In her Declaration, Malancea admits that "I rarely saw or spoke with other Attending home care workers." *See* Declaration of Viorica Malancea in Support of Plaintiff's Motion for Collective Action Certification ("Malancea Decl.") at ¶ 4. She further admits that "I worked as a sole home care worker in my clients' home" thus without any contact with other HHAs employed by MZL. *See* Malancea Decl. at ¶ 4. Additionally, Plaintiff alleges that during the period when the Final Rule was *vacated*, she worked two (2) hours more than forty (40) hours per week thus requiring under the FLSA overtime compensation and time and one half of her regular rate of pay. *See* Malancea Decl. at ¶ 3. As demonstrated by the pay stubs annexed

4

to the Declaration of Philip K. Davidoff, this constitutes the only week in which she worked more than forty (40) hours per week. *See* Davidoff Decl. Ex. D  By her own admission and the lack of any other support from any other current or former employees, she has failed to proffer a single piece of evidence that there is another similarly situated individual or that there was a violation of the FLSA to justify conditionally certifying a collective action.

      **C.**      **Plaintiff's Individualized Working Conditions.**

A brief discussion of Malancea's own working conditions demonstrates the nature of the individual considerations that will prevail with regard to her FLSA claims which all predate the October 2015 change in the FLSA's Companionship Exemption (and her termination date in August 2015).

Plaintiff was employed by MZL as a Licensed HHA for less than a year from October 2014 until around August 2015. *See* Complaint at ¶ 9.  During her employment with MZL, Malancea worked with several of its clients.  For instance, in or around 2014, Plaintiff worked with at least four different clients, performing tasks all of which were related directly to the client's care and safety.

      **1.**      **Ms. "B"**

During her employment, Malancea worked with Ms. "B", who was a client who required use of a cane with a focus on keeping the client safe at home.  According to her plan of care, Ms. B required assistance with grooming, dressing and mouth care. *See* Davidoff Decl. Ex. A.

In connection with her personal care needs, Ms. B's plan of care called for the HHA, in this case Malancea, to perform shopping/errands, cleaning of the bathroom, kitchen and patient's room as well as changing the client's linen.  These tasks were related directly to the client's care and safety. *See id.*

5

### 2. Ms. "I"

During her employment, Malancea worked with Ms. "I", who was a client required use of a walker and posed a fall risk. Ms. I also required special attention as a fall risk. According to her plan of care, Ms. I required assistance with grooming, mouth care, toileting and ambulation. *See* Davidoff Decl. Ex. B.

In connection with her personal care needs, Ms. I's plan of care called for the HHA to prepare meals, shop, clean the bathroom, kitchen and patient's room and change linens. All of these tasks were related directly to the client's care and safety. *See id.*

### 3. Ms. "M"

During her employment, Malancea worked with Ms. "M", who was a client who posed a fall risk. According to her plan of care, Ms. M required assistance with grooming, dressing, shaving, toileting and required special skin care. *See* Davidoff Decl. Ex. C.

In connection with her personal care needs, Ms. M's plan of care called for the HHA to prepare meals, shop, clean the bathroom, kitchen and patient's room, change linens and mop the floor as needed. All of these tasks were related directly to the client's care and safety. *See id.*

## III. LEGAL ARGUMENT

*First*, Courts agree that the standard governing conditional certification, while lenient at this stage, is not met where the answers to central questions of liability depend on highly individualized factual inquiries. Here, MZL submits that the resolution of the proposed collective claims arising *prior to the change* in the Companionship Exemption requires exactly the type of case-by-case (in fact, shift-by-shift, week-by-week) analysis under the former Companionship Exemption that has led courts to deny conditional certification to such claims. *See De Carrasco v. Life Care Servs., Inc.* No. 17 Civ. 5617 (KBF), 2017 U.S. Dist. LEXIS 206682 (S.D.N.Y. Dec. 15,

2017); *Cowell v. Utopia Home Care, Inc.*, No. 14 Civ. 736 (LDW)(SIL), 2016 U.S. Dist. LEXIS 104495 (E.D.N.Y. Aug. 8, 2016).

It is MZL's position that the changes to the FLSA's companionship exemption affecting Plaintiff's FLSA overtime claim became effective on October 13, 2015, after Plaintiff's employment with MZL ended, not on January 1, 2015. While admittedly district courts are split on the issue of when the changes to the Companionship Exemption became effective, MZL submits that the district courts that have found the revisions to the exemption effective as of October 13, 2015 are more soundly reasoned and urges the Court to so rule.[3] Additionally, Malancea's own union acknowledged that the effective date of the DOL rule effectively eliminating the Companionship Exemption should be October 13, 2015, as codified in the CBA.

*Second*, in the event that the Court nonetheless determines that the change in the FLSA's Companionship Exemption was effective on January 1, 2015, not October 13, 2015, MZL manifestly was justified *at the time* in continuing its application of the former Companionship Exemption and relying on the highly publicized decision of the United States District Court for the District of Columbia in *Home Care Ass'n of Am. V. Weil*, 76 F. Supp. 3d 138 (D.D.C. 2014) in which the Court *vacated* the U.S. Department of Labor's Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454 ("Final Rule"), which effectively

---

[3] District courts are split on whether the DOL's revisions were effective on January 1, 2015 or on October 13, 2015, when the circuit court in *Weil* issued its mandate. *See, e.g., Alves v. Affiliated Home Care of Putnam, Inc.*, No. 16-CV-1593 (KMK), 2017 U.S. Dist. LEXIS 17893, at 3 (S.D.N.Y. Feb. 8, 2017) (effective October 13, 2015); *Sanchez v. Caregivers Staffing Servs.*, No. 1:15-cv-01579, 2017 U.S. Dist. LEXIS 11259, at *7 (E.D. Va. Jan. 26, 2017) (finding "the DOL rule did not become effective until the D.C. Circuit reversed and issued a mandate, making the reversal effective."); *Bangoy v. Total Homecare Sols.*, LLC, No. 15-CV-573 (SSB), 2015 U.S. Dist. LEXIS 177859, at *3 (S.D. Ohio Dec. 21, 2015) (effective October 13, 2015; to hold otherwise would place employer in "untenable position."); *but see, e.g., Dillow v. Home Care Network, Inc.,* No. 16-CV-612 (TSB), 2017 U.S. Dist. LEXIS 27133, at *2-5 (S.D. Ohio, Feb. 27, 2017) (effective January 1, 2015); *Kinkead v. Humana, Inc.*, No. 15-CV-01637 (JAM), 2016 U.S. Dist. LEXIS 143000, at *2-3 (D. Conn. July 19, 2016) (effective January 1, 2015). *See also Lee v. Caregivers for Independence, LLC,* 16-cv-00946 (S.D. Ohio, June 21, 2017) (effective October 13, 2015 and compiling cases.)

eliminated the Companionship Exemption. Accordingly, MZL submits that application of the FLSA's two (2) years statute of limitations is warranted as a matter of law. Thus, Malancea's collective claims, which are and can only be based solely on the "effective date" of the Final Rule are time-barred as to her.

*Third*, in the event the Court nonetheless determines that MZL's reliance on the effective date of the change to the FLSA's Companionship Exemption warrants application of a three (3) year statute of limitation, MZL's reliance on the CBA for the payment of in-service training, which constitutes the *only* two (2) hours of work over forty (40) hours in a workweek that Malancea worked during her entire employment with MZL, cannot constitute a willful violation of the FLSA thus also warranting the two (2) year statute of limitation, by which Malancea's claims would be time barred.

> A.  **Plaintiff's Claims are Inappropriate for Conditional Certification Treatment because She was Subject to the Companionship Exemption through October 13, 2015 (after her employment already ended) which Requires an Individualized Inquiry**
>
> > 1.  *Conditional Certification is Discretionary and Requires Factual Support*

In "appropriate cases," district courts have the *discretionary* power to grant conditional certification and authorize notices to be sent to potential opt-in plaintiffs. *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010)*; see also Romero v. H.B. Auto. Grp., Inc.*, No. 11 CIV. 386 CM, 2012 U.S. Dist. LEXIS 61151, at *5 (S.D.N.Y. May 1, 2012) (conditional certification is "intended to encourage judicial economy by 'efficient resolution in one proceeding of common issues of law and fact.'"). In order to obtain conditional certification, Plaintiff bears the burden to demonstrate that she *and the other HHAs* are similarly situated "with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555. Plaintiff must make a "modest factual showing" to satisfy this burden; "modest," however, "is not non-existent." *Jenkins v. TJX Companies Inc.*, 853 F. Supp.

8

2d 317, 322 (E.D.N.Y. 2012); *see also Vasquez v. Vitamin Shoppe Indus., 10* Civ. 8820, 2011 U.S. Dist. LEXIS 74376, at *3 (S.D.N.Y. Jul. 11, 2011) (conditional "certification is not automatic"). As shown below, Plaintiff's factual showing is non-existent. Plaintiff cannot rely on "unsupported assertions" to demonstrate that there was a "common policy or plan that violated the law." *Myers*, 624 F.3d at 555. In evaluating the adequacy of Plaintiff's "factual showing," the court is "under no obligation . . . to accept the plaintiff's allegations as true" and may rely on the full record before it as submitted by both parties. *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010); *see also*, *e.g.*, *Khan v. Airport Mgmt. Servs., LLC*, No. 10 CIV. 7735 NRB, 2011 U.S. Dist. LEXIS 133134, at *3 (S.D.N.Y. Nov. 16, 2011) (stating court may review all parties' submissions).

As an initial matter, Plaintiff's entire motion for conditional certification relies solely on her Declaration. Plaintiff fails to provide a declaration from any other MZL employees nor have any other MZL current or formerly employees joined this litigation to date. In addition, Plaintiff inexplicably relies on a New York State Supreme Court action[4], which alleges only New York Labor Law claims, to attempt to find support for her FLSA claims. Notably, in her Declaration, Malancea admits that she "rarely saw or spoke with other Attending home care workers." This differs significantly from other FLSA cases in which conditional certification has been granted on the basis of the Plaintiff's affidavit alone, because those cases primarily rely on the plaintiff's

---

[4] Any reliance or reference to the currently pending state court action against MZL as a means to support Malancea's overtime claim is misplaced. In the state court action, Plaintiff Lutfieva is proceeding on a completely different theory of law applicable only under the New York Labor Law and accompanying regulations. Specifically, Lutfieva is arguing that she worked 24 hour shifts for which she was only paid for 13 hours. MZL's pay policy was in accordance with the New York State Commissioner of Labor's residential employee rules contained in the Miscellaneous Wage Order. *See e.g.* 12 NYCRR § 142-2.1(b). The state court overtime claims, therefore, have no bearing on Malancea's overtime claims since they are asserted under a completely different statutory and regulatory framework. Any reliance on the State Court action to attempt to demonstrate that Malancea's FLSA overtime claims are similar to any other employee is inapposite. Furthermore, the issues alleged in the State Court Action are currently being briefed before the New York Court of Appeals.

single affidavit in which he or she is "aware, based upon personal conversations" of other employees "who were subject to the same policies." *See cf. Wraga v. Marble Lite, Inc.*, No. 05 Civ. 5038 (JG)(RER); 2006 U.S. Dist. LEXIS 60457 (E.D.N.Y. Aug. 22, 2006); *see also Bowens v. Atlantic Maintenance Corp.*, 546 F. Supp. 2d 55, 82 (E.D.N.Y. 2008) (granting motion for conditional certification based on declaration by plaintiff "confirming that she *and other non-exempt employees* . . . were paid less than the minimum wage). Plaintiff Complaint and Motion for Conditional Certification fail to satisfy the minimal burden necessary to justify conditionally certifying a collective action since she has not identified a single similarly-situated employee who was subjected to the same alleged *FLSA* violations.

### 2. *The Scope of the Former Companionship Services Exemption*

The parties' dispute is substantially governed by the application of the FLSA's former Companionship Exemption, which exempted from federal overtime wage requirements all individuals "employed in domestic service employment who provide[d] companionship services for individuals who (because of age or infirmity) [were] unable to care for themselves (as such terms [were] defined and delimited by regulations of the Secretary)." 29 U.S.C. § 213(a)(15). Under the former exemption, "companionship services" was defined as "those *services which provide fellowship, care, and protection for a person* who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs." 29 C.F.R. § 552.6. Under U.S. Department of Labor regulations and a widely-cited[5] DOL opinion letter, this covered household work related to the care of the aged or infirm person, including, for example:

- meal preparation
- bed making

---

[5] *Cowell v. Utopia Home Care, Inc.*, 144 F. Supp. 3d 398 (E.D.N.Y. 2015); *Torres v. Ridgewood Bushwick Senior Citizens Homecare Council, Inc.*, No. 08 Civ. 3678, 2009 U.S. Dist. LEXIS 33622, at *3-5 (E.D.N.Y. Apr. 22, 2009) (holding DOL Opinion Letter "fills the gap left in the . . . regulation" about "other similar services," finding DOL's interpretation reasonable, and dismissing plaintiffs' complaint for failure to allege performing heavy cleaning duties)**.**

- o washing of clothes
- o other similar services
- o cleaning the client's bedroom, bathroom or kitchen
- o picking up groceries, medicine, and dry cleaning

29 C.F.R. §552.6; Opinion Letter Fair Labor Standards Act (FLSA), 1995 WL 1032475, at *1 (Mar. 16, 1995) ("DOL Opinion Letter").

The former Companionship Exemption additionally included "the performance of general household work: Provided, however, that such work was incidental, *i.e.*, did not exceed 20 percent of the total weekly hours worked."  29 C.F.R. § 552.6.  There is no bright-line rule for defining what constituted "general household work," also sometimes referred to as non-exempt work. By way of example, the U.S Department of Labor opined that "general household work" services *might* include:

- o cleaning refrigerators, ovens,
- o trash or garbage removal
- o cleaning the rest of a "trashy" house

DOL Opinion Letter, 1995 DOLWH LEXIS 22, at *1.

In other words, "general household work" was deemed to be work unrelated to the fellowship, care, and protection of the client and is subject to a 20% limitation.  By contrast, "household work[] that is related to the fellowship, care or protection of the[] client wouldn't negate the exemption." *Cowell v. Utopia Home Care, Inc.*, No. 14 Civ. 736 (LDW)(SIL), 2016 U.S. Dist. LEXIS 104495 (E.D.N.Y. Aug. 8, 2016); *Severin v. Project Ohr, Inc.*, No. 10 CIV. 9696 DLC, 2012 WL 2357410, at *3 (S.D.N.Y. June 20, 2012); *Foster v. Americare Healthcare Servs., Inc.*, No. 2:13-CV-658, 2015 WL 8675518, at *8 (S.D. Ohio Dec. 11, 2015) (identifying exception to the companionship exemption for "'general household' work unrelated to the care of the client'"); *Rodriguez v. Jones Boat Yard, Inc.*, No. 09-23195-CIV, 2010 U.S. Dist. LEXIS

11

143603, at *2-6 (S.D. Fla. July 26, 2010)[6] (holding home care worker was exempt because nearly all of wide range of services were related to the client's personal care); *Terwilliger v. Home of Hope, Inc.*, 42 F. Supp. 2d 1231, 1253 (N.D. Okla. 1999) (holding the test for 20% general household work exception "should be whether a particular task is necessary for the care or habilitation training of a particular client" and granting judgment for employer).

        3.     *Plaintiff Does Not and Cannot Demonstrate that She and Other HHAs are "Similarly Situated" Merely Based on HHAs' Exemption Status, which at the Time was a Facially Lawful Policy*

Plaintiff does not, and cannot, demonstrate a "common facially illegal" policy applicable to all HHAs. To the extent Plaintiff attempts to rely on the fact that HHAs were, prior to the change in law, categorically classified as exempt, Plaintiff's argument must fail. "As numerous courts in this Circuit have held, 'mere classification of a group of employees . . . as exempt . . . is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated.''" *Jenkins*, 853 F. Supp. 2d at 323. "[T]he relevant practice that binds FLSA plaintiffs together" must be "the one that is alleged to have violated the statute itself." *Guillen v. Marshalls of MA, Inc.*, No. 09 CIV. 9575 LAP GWG, 2012 U.S. Dist. LEXIS 91639, at *1 (S.D.N.Y. July 2, 2012) ("*Guillen II*"). Because MZL's treatment of HHAs as exempt prior to October 2015 was facially lawful, it cannot be the basis for conditional certification. It does not appear that Plaintiff seriously contests this, thus, Plaintiff's allegations clearly place her work within the ambit of exempt work under the former companionship exemption.

        **B.**     **Plaintiff Is Barred from Seeking Collective Action Treatment Because her Statute of Limitations to File Collective Claims Expired in August 2017, Six Months before She Filed her Collective Claims.**

---

[6] *Report and recommendation adopted,* No. 09-23195-CIV, 2010 U.S. Dist. LEXIS 143605 (S.D. Fla. Oct. 25, 2010) *aff'd,* 435 F. App'x 885 (11th Cir. 2011).

Malancea's collective claims were first brought on February 1, 2018—two and a half years after her employment with MZL ended. With respect to these collective claims, it is from that date that the applicable statute of limitations period should be evaluated.

The statute of limitations for an FLSA claim is generally two (2) years. 29 U.S.C. § 255(a). Only where a plaintiff can demonstrate that the employer's alleged violation was willful will the statute of limitations be extended to three (3) years. *Id.* The employee must prove by substantial evidence that the employer knew it was in violation of the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130 (1988). MZL submits that application of the two (2) year statute of limitation clearly is warranted here with regard to Plaintiff's collective claims. Thus, collective claims accruing on or before February 1, 2016 are time barred. Here, Malancea was not even employed by MZL at that time; her employment ended in August 2015.

In this regard, to the extent Malancea would argue that MZL's decision to begin providing overtime premiums to HHAs began in October 2015, as opposed to January 2015, is evidence of willfulness, such position should be rejected. Indeed, MZL's reliance on the *Weil* decision, as well as the U.S Department of Labor's position that enforcement of the newly revised Companionship Exemption would not begin until November 12, 2015, clearly was commonplace in the home care industry and justifiable, even if ultimately incorrect as a result of the legal doctrine of retroactivity of appellate decisions. In fact, Malancea's own union agreed that October 13, 2015 was the effective date. *See* Davidoff Decl. Ex. E. Given the *Weil* court's *vacatur* of the Final Rule, MZL had an objectively reasonable basis to believe that it was not required to pay overtime wages for work performed until at least October 13, 2015, if not November 12, 2015. *See Guerrero v. Moral Home Servs.,* 247 F. Supp. 3d 1288, 1293 (S.D.Fl. 2017).

Furthermore, with regard to the issue of willfulness, MZL's reliance upon the District Court's decision in *Weil*, must not be viewed in hindsight, but rather at the time of Malancea's employment. From January 1, 2015 through the end of Malancea's employment in August 2015, the legal status of the Final Rule was a legal nullity. For all intents and purposes, the Final Rule was deemed unlawful and therefore it had been vacated. Thus, during the period of January 1, 2015 through the end of her employment in August 2015, MZL reasonably paid Malancea in accordance with the FLSA's longstanding--and at the time still effective--Companionship Exemption. It was only after the fact *and two months after her employment ended*, that the D.C. Circuit overturned the District Court's decision and reinstated the Final Rule effectively ending the Companionship Exemption.

Malancea's collective action allegations first raised in February 2018, are beyond the two (2) year statutory period within which to pursue collective claims because her employment ended in August 2015. Put another way, Defendant submits that any claims Malancea asserts under the new Final Rule, whether it became effective January 1, 2015 or October 13, 2015, are subject to the two (2) year statute of limitation for the reasons set forth above. Accordingly, Malancea's collective action claim is time-barred, because either it is more than two years prior to February 1, 2018 (in the case of a January 1, 2015 effective date) or because she was not employed by MZL (in the case of an October 13, 2015 effective date).

      **C.**    **Plaintiff's Claim for In-Service Training Is Likewise Subject to the Two (2) Year Statute of Limitation because MZL Relied on the Terms of Its Collective Bargaining Agreement with Plaintiff's Union[7]**

---

[7] Defendant notes at the outside of this analysis that Plaintiff has failed to allege a single fact that any other MZL employee was not properly paid for in-service training. Therefore, independent of the argument asserted in this section, Plaintiff cannot meet her even minimal burden to obtain conditional certification of a collective action for any alleged FLSA violation.

If the Court nonetheless determines that the effective date of the Final Rule eliminating the Companionship Exemption was effective January 1, 2015, instead of October 13, 2015 and that reliance on the D.C. District Court's decision constituted a willful violation, Plaintiff's claims are nevertheless subject to the two (2) year statute of limitation period for an entirely separate reason. As discussed above, MZL was and remains a signatory to a collective bargaining agreement with Plaintiff's former union, Local 2013 of the United Food and Commercial Workers. In the CBA, the parties identify that in-service training shall be paid at the straight-time rate. *See* Davidoff Decl. Ex. E. Regardless of its underlying accuracy, MZL's reliance on the CBA demonstrates that it did not engage in a *willful* violation of the FLSA. *See Bracamontes v. Bimbo Bakeries U.S.A.*, No. 15 Civ. 02324 (RBJ); 2017 U.S. Dist. LEXIS 122806 at *16-18 (D.Col. Jul. 14, 2017) (holding that Plaintiffs failed to demonstrate that Defendants' reliance on the terms of a collective bargaining agreement constituted a willful violation of the FLSA, therefore applying the two (2) year statute of limitations); *Abbey v. City of Jackson*, 883 F. Supp. 181 (E.D.Mich. 1995) (holding that Defendant did not willfully violate the FLSA and applying a two (2) year statute of limitations when it relied on the terms of a collective bargaining agreement in which the parties engaged in intense negotiations that resulted in a collective bargaining agreement, "which defendant followed faithfully.").

Defendant MZL relied upon and faithfully complied with the terms of the CBA negotiated with Plaintiff's union. Therefore, if the Court were to find any violation, it could not reasonably determine that the violation was willful, thus again warranting a two (2) year statute of limitations period, by which Plaintiff's FLSA claims would be time barred.

> **D.**     **Plaintiff's Proposed Collective Action Notice Must Be Amended; However It Is Premature to Address Such Objections until the Court Issues a Decision.**

MZL has numerous objections to Plaintiff's Proposed Notice. Defendant is prepared to provide the full extent of its objections at the appropriate time. However, given the numerous issues addressed above, MZL believes it is premature to discuss at length the language of the Proposed Notice at this juncture and respectfully requests the opportunity to fully expound upon its objections following this Court's decision on Plaintiff's motion for conditional certification, when the scope of any potential collective action is determined.

### IV.  CONCLUSION

For these reasons, Defendant MZL, respectfully requests that the Court deny Plaintiff's motion to conditionally certify a collective action.

Dated: July 6, 2018
New York, New York

By:  s/ *Philip K. Davidoff*
Philip K. Davidoff, Esq.
Jeffrey G. Douglas, Esq.
FORDHARRISON LLP
*Attorneys for Defendant*
60 E. 42nd Street, 51st Fl.
New York, NY 10165
Tel: 212-453-5900