UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
VIORICA MALANCEA, individually and on
behalf of all others similarly situated,

                         Plaintiff,

               -against-

MZL HOME CARE AGENCY LLC,

                        Defendant.
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
18 CV 0732 (CBA) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

On February 1, 2018, plaintiff Viorica Malancea commenced this action on behalf of
herself and all other similarly situated home care workers against defendant MZL Home Care
Agency LLC ("MZL"), pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*
("FLSA"), and the New York Labor Law, Art. 19 § 650 *et seq.* and Art. 6 § 191 *et seq.*
("NYLL"), alleging various wage violations. On December 20, 2019, plaintiff filed a renewed
motion to certify an FLSA collective action.[1] On January 29, 2020, defendant notified the Court
that the claims had been settled in a state court action and, on February 12, 2020, requested that
this action be stayed pending final approval of the state court settlement.[2]

For the reasons set forth below, the Court recommends granting the stay and denying the
motion for conditional certification of a collective action without prejudice.

<u>BACKGROUND</u>

Plaintiff initially filed a motion for conditional certification of an FLSA collective class
on June 7, 2018. On February 1, 2019, this Court recommended that the motion be denied

---

[1] Plaintiff's renewed motion for certification was referred to the undersigned by Judge
Carol Bagley Amon on February 26, 2020.

[2] On February 20, 2020, the district court referred the motion for a stay to the undersigned.

without prejudice and the district court adopted that recommendation by Order dated March 1, 2019. The February 1, 2019 Report and Recommendation is incorporated herein by reference.

As set forth in the February 1, 2019 Report and Recommendation, defendant MZL is a home health care agency whose workers provide home-based aid to individuals in need of assistance. (Compl.[3] ¶ 1). Plaintiff Malancea alleges that she was employed by MZL as a home health aide from approximately October 2014 until approximately August 2015. (Compl. ¶¶ 9, 10). According to the Complaint, defendant failed to pay its home care workers proper overtime wages and the total minimum compensation required under the Wage Parity Law. (Id. ¶¶ 2, 43). Plaintiff's claimed violation was limited to one week in April 2015, when she worked 42 hours but only received $10 for each additional hour over 40, instead of the legally required $15.00 per hour. (Pl.'s Mem.[4] at 6).

In opposing the initial motion for certification, not only did defendant submit all of plaintiff's pay stubs while she was employed by defendant, showing that she only worked more than 40 hours per week on that one occasion (see Davidoff Decl., Ex. D[5]), but defendant explained that its home health aides are not similarly situated to one another. (Def.'s Mem.[6] at 1). After reviewing the submissions, this Court issued its February 1, 2019 Report and Recommendation ("R&R"), recommending that the plaintiff's motion for conditional

---

[3] Citations to "Compl." refer to plaintiff's Complaint, filed on February 1, 2018, ECF No. 1.

[4] Citations to "Pl.'s Mem." refer to Plaintiff's Memorandum of Law in Support of Motion for Conditional Certification and Court-Facilitated Notice, filed on June 7, 2018, ECF No. 24.

[5] Citations to "Davidoff Decl., Ex. D" refer to plaintiff's pay stubs during her employment with defendant, attached as Exhibit D to the Declaration of Philip K. Davidoff in Support of Memorandum of Law in Opposition to Plaintiff's Motion for Conditional Certification, filed July 6, 2018, ECF No. 30.

[6] Citations to "Def.'s Mem." refer to Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Certification and Court-Facilitated Notice, filed July 6, 2018, ECF No. 30.

certification of a collective be denied at that time based on a finding that plaintiff had not adequately demonstrated that her alleged wage violations were pursuant to a common plan or policy,[7] nor had she sufficiently shown that there were other similarly situated home health aides employed by defendant, who suffered the same types of wage violations alleged in the Complaint.  (R&R at 11).  This Court further recommended that plaintiff be allowed to renew her motion for conditional certification "upon a fuller record."  (Id. at 11, 12).  The defendant was directed to produce payroll data, noting that plaintiff had been unable to obtain information about similarly situated employees due to the isolated nature of their employment assignments.  (Id.)

On March 1, 2019, the district court adopted this Court's Report and Recommendation and discovery proceeded, including the production of defendant's payroll records in August 2019.  (Pls.' R. Mem.[8] at 2).  Plaintiff thereafter filed a First Amended Complaint on December 6, 2019, in which she added a number of factual allegations regarding alleged violations of the FLSA and NYLL, referring to individuals by the employee number provided by defendant in producing the payroll and other records provided in discovery.  (FAC[9] ¶¶ 23-61).  Specifically, the First Amended Complaint alleges that defendant "shorted hundreds" of its employees by

---

[7] As the Court noted, plaintiff's allegation that she "worked hours exceeding 40 hours per week" without proper overtime compensation (Compl. ¶¶ 20, 22), supported by only one week's pay stub, was not sufficient to support a common plan or policy, particularly when contrasted with defendant's production of numerous paystubs spanning the period from January 1, 2015 through August 2015, showing that plaintiff never worked more than 40 hours per week other than on this one occasion.  (R&R at 11, n. 8).  "To plead a plausible FLSA overtime claim, [plaintiff] must provide sufficient detail about the length and frequency of [her] unpaid work to support a reasonable inference that they worked more than forty hours in a given week." Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 201 (2d Cir. 2013).

[8] Citations to "Pl.'s R. Mem." refer to Plaintiff's' Memorandum of Law in Support of Renewed Motion for Conditional Certification of FLSA Collective Action and Court-Facilitated Notice, dated December 20, 2019.

[9] Citations to "FAC" refer to plaintiff's First Amended Complaint, filed December 6, 2019, ECF No. 55.

failing to pay overtime at one and one-half times the employees' regular hourly rate of $15.00. (Id. ¶¶ 23, 26).  As an example, plaintiff cites Employee No. 2663 who was not paid for one hour of overtime in the period January 2015 and October 2015.  (Id. ¶ 27).

The First Amended Complaint also alleges that defendant misclassified certain hours as "straight" time, regardless of the number of hours worked in a week.  (Id. ¶ 28).  This included time spent in "in-service training," which defendant classified as "straight time," but when considered in conjunction with the other hours worked in a week should have been compensated at the overtime rate.  (Id. ¶¶ 28, 29).  Plaintiff cites Employee No. 3073 as an example of an employee falling within this category.  (Id.)  Plaintiff also alleges that employees were denied proper overtime pay due to defendant's use of blended rates, time shaving, and a failure to pay for travel time when an employee had two different clients in one day.  (Id. ¶¶ 30-32, 36, 39-40). Plaintiff also raises claims under the NYLL, including a failure to pay New York State minimum wages, and violations of the Wage Theft Prevention Act and the Wage Parity Law.  (Id. ¶¶ 42-46, 47-49, 50-61).

On December 20, 2019, plaintiff filed a renewed motion for conditional certification, arguing that she had satisfied her "very low" or "minimal" burden necessary to show that there were similarly situated employees who were subjected to the same policies as the plaintiff.  (Pl.'s R. Mem. at 6-10).  Specifically, she seeks an Order certifying a collective class under the FLSA, consisting of similarly situated hourly home care workers.  (Id. at 10).  In support of her renewed motion for certification, plaintiff cites examples of specific employees from defendant's payroll records who were not paid at the proper overtime rate between January 2015 and October 2015 (id. at 11), specific employees who were not paid overtime after 2015 (id. at 12), specific employees who were not paid properly for "in-service" hours (id. at 12-13), specific employees

4

paid at a blended rate and not paid proper overtime (id. at 13-14), and specific employees not paid for travel time.  (Id. at 15-16).

Rather than file a direct response to the motion for certification, defendant submitted a letter dated January 29, 2020, in which the defendant indicated that a settlement had been reached in a putative class action pending in New York State Court against defendant.  That case, Lutfieva v. MZL Home Care Agency, Index No. 150740/2017 (N.Y. Cnty), had been raised initially by plaintiff in her original motion for collective action certification.  (Pl.'s Mem. at 12-13 (citing Lutfieva v. MZL Home Care Agency, LLC, No. 159740/2017, Dkt. No. 1 (Sup. Ct. N.Y. Cnty., Nov. 1, 2017)).  Specifically, plaintiff provided the complaint in that New York State wage and hour case as support for the argument that there were other individuals employed by MZL, who were parties in the Lutfieva action, who were similarly situated to plaintiff.  According to the state complaint, the plaintiff in Lutfieva worked 24-hour shifts and claimed that she was paid for only thirteen hours of her 24-hour shift.  (See, e.g., Wittels Decl., Ex. 6 ¶¶ 18-28).  At the time of the initial motion for collective action certification, defendant argued, and this Court found, that the claims in Lutfieva were substantially different from the claims in plaintiff's original Complaint, where plaintiff appeared to have generally worked 40 hours per week with the exception of the one pay period when she worked the two additional hours which were paid at the regular rate as "in-service training" hours.  In denying the motion for certification, this Court found that, without more information, the complaint from the state case was insufficient to establish that employees who worked 24-hour shifts are similarly situated to plaintiff Malancea and have similar claims of overtime violations.  (R&R at 11).

In its letter dated January 29, 2020, defendant now argues that "[t]he Lutfieva action arises out of the same facts and circumstances, covers the same employees and former

employees, including Plaintiff Malancea, and asserts substantially similar claims under the New York Labor Law . . ., the Fair Labor Standards Act . . ., and the New York Wage Parity Act. . . as those asserted in this action."  (Def.'s 1/29/2020 Ltr. at 1).  The defendant indicated that the Lutfieva matter has settled on a class-wide basis and was awaiting settlement approval by the New York State Court.  (Id.)  According to defendant, the settlement class in Lutfieva has been defined as "[a]ll individuals employed as Home Health Care Workers by Defendant MZL Home Care Agency LLC ('MZL') in New York from November 1, 2011 through and including December 31, 2018."  (Id., n. 1).  Defendant submits that because of the settlement reached in Lutfieva, there is no need for any further proceedings in this federal action with respect to the plaintiff's motion for certification, and requests that the motion be terminated and the action stayed pending Ms. Malancea's decision as to whether she wishes to participate in the Lutfieva settlement.  (Id. at 1).

In response, plaintiff submitted a letter, dated February 10, 2020, in which she accuses defendant of "attempt[ing] to use a secretive and inadequate settlement in a different case to shut down this important workers' rights class action."  (Pl.'s 2/10/2020 Ltr. at 1).  Despite plaintiff's prior reliance on Lutfieva to argue that there were similarly situated employees, plaintiff's February 10, 2020 letter now describes the state case as "a completely different case," and contends that defendant's argument that the claims in the two cases were overlapping and substantially similar "flies in the face of the earlier claims Defendant made to [the undersigned]." (Id. at 2).  Instead, plaintiff now argues that, because the plaintiffs in the two cases are proceeding on different theories, Lutfieva cannot settle Ms. Malancea's claims or the claims of the proposed collective members.  (Id.)

Plaintiff argues that the New York State Court of Appeals agreed with federal courts that the types of 24-hour claims raised in Lutfieva are not susceptible of class treatment.  (Id. (citing Andryeyeva v. New York Health Care, Inc., 33 N.Y.3d 152, 100 N.Y.S.3d 612 (2019)).  As a consequence, plaintiff asserts that the defendant settled for only $3 million with the plaintiff in Lutfieva, after only three hours of discussion, because defendant knew it could never be held liable for the class-wide violations alleged in that case.  (Id. at 3).  Plaintiff contends that the plaintiff in Lutfieva did not conduct sufficient discovery necessary to understand the full extent of the illegal conduct that is at issue in the instant litigation and more importantly, the Lutfieva case did not initially include any FLSA claims.[10]  (Id.)  Plaintiff also contends that "an astounding 80% of the settlement funds" were allocated to the 24-hour workers, leaving the "thousands" of workers who are part of the Malancea proposed class left with "inadequate" consideration.  (Id. at 4).

Defendant submitted a second letter dated February 12, 2020, seeking once again to have this Court stay the current action in light of the Lutfieva settlement.  (Def.'s 2/12/2020 Ltr. at 1).  Defendant disputes plaintiff's claim that there was anything "nefarious" about the settlement, noting that the settlement was reached after a mediation with Martin F. Scheinman, a respected court mediator, and occurred following "extensive, yet proportionate, Court-mandated discovery involving a sampling of a cohort of current and former employees. . . ."  (Id. at 2).  Defendant notes that the settlement includes a release of all FLSA claims which are subsumed within the NYLL claims.  (Id.)

---

[10] As discussed in the next paragraph, both parties are technically correct on this point. Although the original Lutfieva complaint did not contain FLSA claims, the amended complaint – filed along with the motion for settlement in state court – does include FLSA claims.

In reply, plaintiff contends that the briefing on the motion for conditional certification is now complete and the court should grant the motion.  (Pl.'s 2/13/2020 Ltr. at 1).  Plaintiff argues that based on its analysis of defendant's payroll records, defendant has, through its wage and hour violations, deprived thousands of these low-wage workers of "*millions* of dollars." (Id. (emphasis in original)).  Plaintiff notes that defendant has not attempted to dispute plaintiff's arguments in support of certification, but merely points to Lutfieva, where the settlement agreement was actually signed the same day as defendant's opposition papers in this case were due.  (Id. at 3).  Plaintiff accuses defendant of having engaged in a "reverse auction" with Lutfieva's counsel.  (Id. (citing Reynolds v. Beneficial Nat'l Bank, 288 F.3d 277, 282 (7th Cir. 2002).  Plaintiff notes that defendant never indicated to this Court that it was attempting to settle and extinguish the claims in plaintiff's case without inviting plaintiff's counsel to participate in the negotiations.  (Id. (citing Litty v. Merrill Lynch & Co., No. 14 Civ. 0425, 2015 WL 4698475, at *10 (C.D. Cal. Apr. 27, 2015))).

<u>DISCUSSION</u>

A. <u>Motion to Stay</u>

Defendant argues that this Court should deny plaintiff's motion for conditional certification and stay this federal action to allow the state court time to consider the fairness of the proposed settlement in Lutfieva.  (Def.'s Stay Mem.[11] at 4).  The defendant contends that a stay is warranted because the state court action was filed several months before this federal putative class and collective action, and the parties have reached a comprehensive settlement in the state action that covers the proposed collective action members in this case.  Defendant

---

[11] Citations to "Def.'s Stay Mem." refers to Defendant's Memorandum of Law in Support of Its Motion to Stay All Proceedings in This Case, dated March 30, 2020, ECF No. 81.

argues that abstention is appropriate under <u>Colorado River Conservation District v. United States</u>, 424 U.S. 800 (1976), to allow the state court time to consider the class settlement that was reached after successful negotiations with a "highly skilled mediator."  (Def.'s Stay Mem. at 3).

Plaintiff opposes the motion for a stay on several grounds:  1) MZL's "reverse auction settlement" in <u>Lutfieva</u> is unfair and is prejudicial to the absent class members; 2) the collusive settlement should not delay conditional certification in this action; 3) the <u>Colorado River</u> abstention doctrine does not apply and even if the tests are satisfied, MZL's improper conduct creates an exception to the doctrine; and 4) assuming the doctrine supports a stay, "[d]efendant has long waived them goodbye."  (Pl.'s Opp.[12] at 6).

Plaintiff argues that from the beginning, the defendant treated the <u>Lutfieva</u> action as separate and independent from the current federal case.  (Pl.'s Opp. at 2).  Acknowledging that the <u>Lutfieva</u> action was filed three months prior to the federal case, plaintiff contends that <u>Lutfieva</u> sought redress only for a small percentage of MZL's employees who were employed for 24-hour shifts but were paid for only 13 hours.  (<u>Id.</u> at 1).  Plaintiff further notes that this Court found in its original Report and Recommendation that <u>Lutfieva</u> is "substantially different from plaintiff's case."  (<u>Id.</u> at 2).  Plaintiff contends that what has now changed is that "[w]ithout notice to Your Honor or Plaintiff's counsel," two months prior to defendant's deadline to respond to plaintiff's renewed motion for conditional certification, "MZL had secretly negotiated a settlement of the class and collective claims in this action by teaming up with the plaintiff's lawyers in <u>Lutfieva</u> and inking a paltry class action settlement during a *three-hour* mediation held the day before Thanksgiving."  (<u>Id.</u> at 3 (emphasis in original)).  Plaintiff asserts that MZL

---

[12] Citations to "Pl.'s Opp." refers to the Plaintiff's Opposition to Defendant's Motion to Stay All Proceedings, dated May 29, 2020, ECF No. 86.

agreed to pay a $1,000,000 legal fee and set up a complicated claims structure designed to ensure that only a small percentage of the $3,000,000 settlement fund will be paid.  (Id. at 3-4). Plaintiff asserts that counsel in Lutfieva failed to conduct adequate discovery prior to settlement and had no basis to measure liability or damages.  (Id. at 4).  While the plaintiffs' counsel in Lutfieva were creating a "damages model based on a deficient sampling of a small fraction of their proposed class," full class-wide discovery had been ordered in this federal case, and Ms. Malancea's expert economist has opined that there was no reason for the Lutfieva lawyers to "sample" MZL's payroll data when the complete data had been produced in this case.  (Id. at 5 (citing Affidavit of Dr. Alexander Vekker ¶ 4, ECF No. 73-1)).

1. Standards for a Stay

In deciding whether to stay discovery in an action, courts consider a number of factors: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and, (5) the public interest."  United States v. Town of Oyster Bay, 66 F. Supp. 3d 285, 289 (E.D.N.Y. 2014).  The party seeking the stay bears the burden of establishing "good cause" for the stay.  Id. (collecting cases).

2. Colorado River Abstention

Defendant relies on the doctrine of abstention set forth in Colorado River Conservation District v. United States, to argue that this Court should grant the stay and allow the state court the time to consider the question of the fairness of the settlement.

In Colorado River Conservation District v. United States, the Supreme Court set forth the standard under which district courts may decline to exercise jurisdiction or should abstain from

proceeding where there are "parallel" or "concurrent" state court proceedings and abstention would serve the interests of "wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." 424 U.S. at 817; see Casias v. Southwest Medical Associates, No. CIV 04-0142 JB/ACT, 2004 WL 7337695, at *1 (D.N.M. July 16, 2004) (holding that "[u]nder the abstention doctrine set forth in Colorado River, federal courts have the power to prevent forum shopping and piecemeal litigation"); see also Garcia v. Tamir, No. 99 CV 298, 1999 WL 587902, at *3 (S.D.N.Y. Aug. 4, 1999).  Recognizing that "[a]bstention . . . is the exception, not the rule," and can be justified "only in exceptional circumstances," Colorado River Conservation District v. United States,  424 U.S. at 813, the Court made it clear that "the potential for conflict" between a state and parallel federal action alone is not enough to justify abstention.  Id.

Pursuant to the Colorado River doctrine, the Second Circuit enumerated six factors that courts must weigh in deciding whether to abstain under Colorado River and its progeny: (1) the assumption of jurisdiction by either court over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.  See Village of Westfield, N.Y. v. Welch's, 170 F.3d 116, 120-121 (2d Cir. 1999) (citing Burnett v. Physician's Online, Inc., 99 F.3d 72, 76 (2d Cir. 1996)); Fox v. Maulding, 16 F.3d 1079, 1082 (10th Cir. 1994) (listing the four Colorado River factors as: "(1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and, (4) the order in which the courts obtained jurisdiction") (citing Colorado River Water Conservation District v. United States, 424 U.S. at

818)).  In Moses H. Cone Memorial Hospital v. Mercury Construction Corp., the Supreme Court

suggested additional factors such as "the vexatious or reactive nature of either the federal or state

action; whether federal law provides the rule of decision; and, the adequacy of the state court

action to protect the federal plaintiff's rights."  460 U.S. 1, 18 (1983).  However, no one factor is

necessarily determinative; a carefully considered judgment taking into account both the

obligation to exercise jurisdiction and the combination of factors counselling against that

exercise is required.  Colorado River Conservation District v. United States, 424 U.S. at 818-

819; see also Fox v. Maulding, 16 F.3d at 1082 (stating: "No single factor is dispositive . . .

Rather than use the factors as a 'mechanical checklist,' a court should engage in 'a careful

balancing of the important factors as they apply in a given case, with the balance heavily

weighted in favor of the exercise of jurisdiction'") (quoting Moses H. Cone Memorial Hospital

v. Mercury Const. Corp., 460 U.S. at 16).

        The first question in determining whether a federal court should defer to a state court

under the Colorado River doctrine is whether the cases are "parallel."  Dittmer v. County of

Suffolk, 146 F.3d 113, 118 (2d Cir. 1998) (holding that "a finding that the concurrent

proceedings are 'parallel' is a necessary prerequisite to abstention under Colorado River"); Levy

v. Lewis, 635 F.2d 960, 967 (2d Cir. 1980) (holding:  "[I]t is clear . . . that abstention for

purposes of judicial economy under Colorado River applies only where concurrent federal-state

jurisdiction exists").  Where the state and federal action are "virtually identical," such that the

essential elements support the same cause of action, regardless of theory or pleadings, then the

actions are duplicative, Telesco v. Telesco Fuel & Masons Materials, 765 F.2d 356, 362 (2d Cir.

1985), and there is a concern that parallel proceedings will produce "inconsistent and mutually

contradictory determinations" that might cause "friction between state and federal courts."  De

Cisneros v. Younger, 871 F.2d 305, 307 (2d Cir. 1989); see also Garcia v. Tamir, 1999 WL 587902, at *6-*7 (where the court abstained from asserting federal jurisdiction, finding that inconsistent results in the two courts could result in "unfairness to defendants and a waste of judicial resources that is averse to the underlying objective of the abstention doctrine").

"Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issue and relief sought are the same." National Union Fire Ins. Co. v. Karp, 108 F.3d 17, 22 (2d Cir. 1997). The parties and issues in the cases need not be perfectly symmetrical; instead, they are sufficiently parallel where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case. See Clark v. Lacy, 376 F.3d 682, 686 (7th Cir. 2004).

In Garcia v. Tamir, the plaintiffs initially brought a complaint in state court alleging violations of state wage and hour laws. 1999 WL 587902, at *1. The same plaintiffs then filed a federal complaint alleging violations of the federal Fair Labor Standards Act. Id. at *2. The court, noting that both cases arose out of the same operative facts, dismissed the federal complaint, relying on the Colorado River abstention doctrine. Id. at *9. In addition to considering that the claims in the two actions were inextricably intertwined and could lead to inconsistent results, the court in Garcia v. Tamir also found that the state court action had progressed further than the federal matter: "The fourth factor concerns the order in which jurisdiction was obtained by the two courts, and, in this case, clearly favors defendants. Analysis of this factor should not rest solely on the order in which the complaints were filed, but should be considered 'in terms of how much progress has been made in the two actions.'" Id. at *7 (quoting Moses H. Cone Memorial Hospital v. Mercury Const. Corp., 460 U.S. at 21).

a) <u>The Parties' Arguments</u>

Plaintiff contends that the <u>Colorado River</u> factors weigh "heavily" in favor of this Court retaining jurisdiction.  (Pl.'s Opp. at 16).  Citing this Court's earlier Report and Recommendation and MZL's position in opposing the initial motion for collective action certification, plaintiff argues that the cases are "'substantially different,'" that the discovery and litigation in this federal action have progressed and are more advanced than in <u>Lutfieva</u>, and a decision of plaintiff's FLSA claims in this action will "provide a rule of decision in the instant action whereas Luftieva only recently sought leave to [add] FLSA claims."  (<u>Id.</u>)  Plaintiff further argues that <u>Lutfieva</u> faces a higher bar to class certification and the proceedings in that case are "on a course to undermine MZL's other workers' rights, as the <u>Lutfieva</u> parties' [sic] are colluding." (<u>Id.</u>)

Plaintiffs' counsel in <u>Lutfieva</u> submitted a letter, strongly disputing Malancea's claim that the two cases are substantially different and that the federal case has progressed further than the state action.  (Lutfieva 2/19/2020 Ltr.[13] at 4).  Counsel notes that Malancea filed her federal action three months <u>after</u> the state court action in <u>Lutfieva</u> was commenced.  (<u>Id.</u> at 1).  The <u>Lutfieva</u> case alleged claims on behalf of a putative class of presently employed or former employees of MZL who perform personal care, health-related tasks and other services.  (<u>Id.</u>)  The <u>Lutfieva</u> pleadings included claims that plaintiffs were required to work without proper hourly compensation for all hours worked, were not paid overtime rates for hours worked over 40 in a week, and were not paid spread-of-hours pay or prevailing wages under the Wage Parity Act and the New York City Administrative Code.  (<u>Id.</u> at 2).  Contrary to plaintiff's claims of

---

[13] Citations to "Lutfieva 2/19/2020 Ltr." refer to the letter filed by the <u>Lutfieva</u> counsel, dated February 19, 2020, ECF No. 71.

14

wrongdoing on the part of the <u>Lutfieva</u> parties, the <u>Lutfieva</u> plaintiffs contend that Malancea filed a "copy-cat" action under the NYLL, seeking to represent the same class of workers for the same unpaid overtime and wages owed under the Wage Parity Act, and adding in a claim for unpaid overtime under the FLSA to establish federal jurisdiction.  (<u>Id.</u> (citing Malancea Compl. ¶¶ 2, 3)).  They claim that "Malancea has copied the State Court Action in every facet and attempted to use its existence . . . [to] gain access to putative class members that have been represented by Plaintiff Lutfieva since 2017."  (<u>Id.</u> at 3).

b) <u>Analysis of the Colorado River Factors</u>

Turning to the <u>Colorado River</u> factors, the first question is whether the state and federal proceedings are parallel.  Although this Court recognizes its earlier conclusion that the two cases were substantially different, things have changed in both cases since the issuance of that earlier Report and Recommendation.  At the time of the earlier Report, this federal case consisted of one claim brought by one plaintiff for two hours of unpaid overtime due to defendant's alleged failure to properly account for time spent in in-service training.  Plaintiff could not identify a single similarly situated employee in support of her motion for collective action certification and attempted to rely on the filings in <u>Lutfieva</u> to satisfy her burden.  However, as this Court recognized, <u>Lutfieva</u> was a different case, involving numerous MZL employees, and raising claims based on multiple violations of the NYLL wage and hour laws.  It is only through the discovery ordered by this Court that plaintiff Malancea now has obtained sufficient information to amend her pleadings and renew her motion for collective action certification.

Examining the current claims in both the state and federal cases, it becomes clear that they are now parallel.  Both cases are brought by home health care workers against the same defendant, MZL.  Both allege wage and hour violations, including defendant's failure to pay

overtime and minimum wages.[14]  Although the <u>Lutfieva</u> plaintiffs filed an Amended Complaint

that added FLSA claims that were not alleged in the original Complaint, both the original and

amended complaint, however, did include an allegation that plaintiffs were forced to attend

training sessions for which they were not paid, which was the sole claim initially brought by

Malancea.  (<u>See</u> <u>Lutfieva</u> Compl. ¶ 65) (alleging that "Defendant also failed to pay Plaintiffs

their regular hourly wage for all the time spent in mandatory training sessions. To the extent the

time spent at these training sessions caused Plaintiffs to work more than 40 hours in one week,

Plaintiffs are required to be compensated at the applicable overtime hourly rate of pay").  That

allegation supports the <u>Lutfieva</u> plaintiffs' claim that, in fact, <u>Malancea</u>, was a "copy-cat case."

Not only was the <u>Lutfieva</u> state court action filed prior to the current federal action, but,

contrary to Malancea's claims, the state case has clearly progressed further than the federal

action.  Not only has there been discovery and a mediation with an experienced mediator but the

proposed settlement currently pending before the state court will, if approved, resolve the claims

in this federal action.  <u>See</u> <u>Sanitec Industries, Inc. v. Sanitec Worldwide, Ltd.</u>, 376 F. Supp. 2d

575, 578 (D. Del. 2005) (holding that "[p]arallelism turns on whether the state litigation will

dispose of all of the claims raised in the federal case"); <u>see also</u> 17A Moore's Federal Practice, §

_____

[14] Defendant argues in the alternative that the state case should be allowed to proceed under the "first-filed doctrine," which provides that when there are two competing lawsuits, with parties and issues that are substantially similar, the first-filed action takes priority.  (Def.'s Mem. at 9-11 (citing <u>N.Y. Marine & Gen. Ins. Co. v. LaFarge N. Am., Inc.</u>, 599 F.3d 112 (2d Cir 2010))).  Although defendant acknowledges that the doctrine generally applies only to two competing federal actions, defendant argues that this Court should consider the rationale advanced in <u>Castillo v. Taco Bell of Am., LLC</u>, 960 F. Supp. 2d 401 (E.D.N.Y. 2013), where the court dismissed the second-filed FLSA collective action based on due process, fairness and common sense concerns.  (Def.'s Mem. at 10-11).  This Court finds it unnecessary to consider the "first-filed doctrine," having concluded that abstention is appropriate under the <u>Colorado River</u> factors.

122.06[1] (Matthew Bender 3d ed.) (stating that "[t]he critical determination is whether the non-federal litigation will dispose of all claims raised in the federal court action").

The proposed Settlement Agreement and Release (the "Settlement Agreement") pending the state court's approval in Lutfieva v. MZL Home Care Agency is extremely broad, which weighs in favor of abstention here.  Indeed, the proposed settlement purports to resolve all disputes brought by "hourly home health aides" employed by MZL, which are defined as anyone who is not a live-in home health aide and which includes both home health aides who work 24-hour shifts and employees, such as plaintiff, who generally worked 40 hours per week.[15]  The questions identified by the Lutfieva plaintiffs in their suit include the same claims as raised in this federal lawsuit: a) whether defendant paid class members the correct statutory wages during the relevant settlement period; b) whether defendant failed to pay overtime at the correct statutory wage rate during the settlement period; and, c) whether defendant failed to pay statutory wages and benefits at the correct statutory wage under the N.Y.C. Admin. Code § 6-109 (the "Living Wage Law") and the New York Public Health Law § 3614-c ("Wage Parity Act") during the settlement period. (See Lutfieva Amended Complaint, Index No. 159740/2017 ¶ 12).

According to the Memorandum of Law submitted with the Settlement Agreement in Lutfieva, each claimant releases defendant from "any and all claims arising under the FLSA and NYLL for minimum wages, overtime wages, spread of hours compensation, and wages owed pursuant to N.Y.C. Admin. Code § 6-109 and New York Public Health Law § 3614-c (Wage Parity Act), plus interest, reasonable attorneys' fees, costs and expenses, Settlement Claims

---

[15] Whether this class is too broad is an issue before the state court.  Under CPLR 901 and 902, "courts have – properly – shown a willingness to order class litigation on liability issues and allow individual damages issues to be handled separately by a special master."  See, e.g., Maddicks v. Big City Properties, LLC, 34 N.Y.3d 116, 127, 114 N.Y.S.3d 1, 9 (2019).

Administrator's fees and costs, Service Awards, interest and damages including Defendant's alleged failure to provide wage notices, paystubs and wage statements." Any class member who does not timely opt out of the settlement releases defendant from "all wage and hour claims." As such, the Settlement Agreement as currently written – and the Amended Complaint filed in state court to accompany that Agreement – appear to encompass the claims of Ms. Malancea, including her federal claims. Under the Colorado River doctrine, these cases are therefore parallel.

Considering the other factors outlined by the Supreme Court in Colorado River, the first factor – whether the court has assumed jurisdiction over property – does not apply, and the second factor looking to the inconvenience of the federal forum is equally irrelevant since both state and federal actions are pending in Brooklyn. Moreover, as both actions contain claims under the NYLL and the plaintiff in the state court action has amended her complaint to include claims under the FLSA, the issue of which law governs is neutral. The third and fourth factor detailed by the Supreme Court in Colorado River – the desire to avoid piecemeal litigation and the order in which the actions were filed – both favor the Lutfieva state court proceeding. Not only was the Lutfieva action filed before Ms. Malancea's case, but the case has progressed further as well, through discovery, a successful mediation, and a proposed settlement. Although plaintiff seems to argue that the state court will not adequately protect the rights of the party in federal court – the sixth factor identified in Colorado River – plaintiff has not provided any support for this argument, and indeed, if the claims in the two actions are considered, the majority of the claims are brought under New York law with which the state court is equally, if not more, familiar.

Thus, considering all of these factors, this action should be stayed to allow the state court to consider the fairness of the proposed settlement.

3. Collusive Reverse Auction Settlement

Plaintiff argues that even if the Colorado River doctrine is found to apply in this case, a stay is not appropriate because the parties in Lutfieva have entered into a "collusive reverse auction." Plaintiff notes that for over two years, the defendant argued that the issues in Lutfieva and Malancea were separate; now, defendant seeks to stay a determination of plaintiff's motion to conditionally certify Malancea's collective FLSA action because the claims were settled in state court. (Pl.'s Opp. at 7). Plaintiff argues that defendant should be "estopped from completely reversing course," and the Court should deny the request for a stay to prevent defendant from this collusive reverse auction settlement to delay the federal action. (Id. at 9 (citing Bernstein v. Virgin Am., Inc., No. 15 CV 2277, 2018 WL 3349183, at *3 (N.D. Cal. July 9, 2018) (stating that defendant "knew about the potential overlap" in the cases for several months before seeking a stay, and noting that if defendant was "serious about conserving resources, it would have filed its stay motion earlier")).

The "reverse auction" has been defined as "the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." Reynolds v. Beneficial Nat'l Bank, 288 F.3d 277, 282 (7th Cir. 2002). In Reynolds v. Beneficial Nat'l Bank, the Seventh Circuit reversed the district court's approval of a $20 million class settlement in a consumer finance class action, finding that the district judge did not give the "issue of the settlement's adequacy the care that it deserved." Id. In ordering a remand for further proceedings before the district court, the appellate court remarked on the fact that

more than 20 separate class actions had been filed, raising state and federal claims, and that defendants "faced substantial exposure," brought by potentially 17 million plaintiffs, who would quickly tap out the $15 million settlement reserve.  Id.  The court further noted that two additional settlement classes were "swept into" this settlement, which would foreclose close to $2 billion in other claims brought by the class.  Although the court would not say that there had been "collusion" that would nullify the settlement, the court found sufficient suspicious circumstances to question whether the district judge had enough information to determine the fairness of the settlement given the circumstances under which the settlement had been reached. Id. at 285-286; see Claridge v. North American Power & Gas, LLC, 2017 WL 3638455, at *1 (S.D.N.Y. Aug. 23, 2017) (denying preliminary approval of a class action settlement because it inexplicably expanded the class definition).

Defendant MZL and plaintiffs' counsel in Lutfieva strongly dispute Malancea's claim that the proposed settlement is a "collusive reverse auction."  (Lutfieva 2/19/2020 Ltr. at 4; Def.'s 2/14/2020 Ltr. at 1).  At the time that Malancea brought her single plaintiff claim for two hours of overtime under the FLSA, Lutfieva had alleged various claims on behalf of a putative class, including a failure to pay compensation for all hours worked, failure to pay overtime, and other violations of New York law.  (Lutfieva 2/19/2020 Ltr. at 2).  The Lutfieva plaintiffs dispute that they have engaged in any collusive conduct or wrongdoing in connection with the proposed settlement of the state action, arguing that Malancea and her counsel are attempting to disrupt the class-wide settlement by making blatant misrepresentations and inaccurate assumptions about litigation "they know absolutely nothing about."  (Id. at 4).

As Lutfieva's counsel notes, Malancea's original claim, and the only claim asserted in support of a collective action under the FLSA, was her own underpayment for two hours.  (Id.)

In moving for certification, her only evidence of similarly situated individuals were the allegations in <u>Lutfieva</u>. (<u>Id.</u>) After that motion was denied, and after over two years had passed since the filing of the state court action, Malancea moved to amend her complaint to copy the claims in <u>Lutfieva</u>. (<u>Id.</u> at 3). Lutfieva notes that Malancea did not move to renew her motion for certification until two months after the state court plaintiffs moved for class certification of the NYLL claims, which include the same claims asserted by Malancea in this federal action. (<u>Id.</u>) According to Lutfieva's counsel, while the motions were being briefed, the parties in <u>Lutfieva</u> attended a private mediation with an experienced and respected mediator and procured a class-wide settlement. (<u>Id.</u>) The <u>Lutfieva</u> plaintiffs contend that there is no prejudice to plaintiff Malancea, who could choose to opt out of the settlement, and who has moved to intervene in the state court action. (<u>Id.</u> at 5, n. 9).

Moreover, contrary to Malancea's allegations, the settlement in <u>Lutfieva</u> was reached after the state court action had been litigated and almost two years of discovery had occurred. (<u>Id.</u> at 4). Lutfieva's attorneys further deny Malancea's claim that there has been an agreement on attorneys' fees as part of the alleged collusion between defendant and the <u>Lutfieva</u> attorneys.[16] (<u>Id.</u>) Finally, the <u>Lutfieva</u> plaintiffs note that Malancea previously argued that the

---

[16] One argument advanced by Malancea in objecting to the stay is that plaintiffs in <u>Lutfieva</u> had a weak case following the decision of the New York State Court of Appeals in <u>Andryeyeva v. New York Health Care, Inc.</u>, 33 N.Y.3d 152 (2019), and therefore secretly settled with defendant in a "reverse auction." (Malancea 3/13/2020 Ltr. at 6 n. 5). Malancea interprets <u>Andryeyeva</u> as holding that 24-hour claims, like those in <u>Andryeyeva</u> and <u>Lutfieva</u>, "are not appropriate for class treatment" in federal courts. (<u>Id.</u>) The <u>Lutfieva</u> attorneys take issue with Malancea's argument that MZL did not face "meaningful class-wide liability," as a result of the <u>Andryeyeva</u> decision, and a close reading of the <u>Andryeyeva</u> decision suggests that Malancea has misread the decision. In addressing the issue of class certification, the court in <u>Andryeyeva</u> found that plaintiffs' assertions raised common questions that may be considered in determining whether class certification is appropriate, noting that "claims of uniform systemwide violations are particularly appropriate for class certification," and "plaintiffs' allegations suggest a policy or practice of unlawful action of the type our courts have previously found ripe for class treatment."

<u>Lutfieva</u> complaint was evidence of similarly situated individuals with "nearly identical" allegations and yet now, plaintiff is engaged "in a desperate attempt to prevent this Court" from finding that the proposed settlement moots plaintiff's claims.[17]

Plaintiff argues that this case is "on all fours" with <u>Dalchau v. Fastaff, LLC</u>, No. 17 CV 1584, 2018 WL 1709925 (N.D. Cal. Apr. 9, 2018), where the federal court denied the defendant's request for a stay, noting that the settlement in the state court action "and the way in which it came about plausibly reflect an attempt on the part of [defendant] to undercut [plaintiff] in the instant action . . . Indeed, circumstances suggest that addition of class-wide causes of action [in the state court] occurred at the behest of [defendant] to escape potential liability here." <u>Id.</u> at *4-5. The court there expressed the concern that entry of a stay would work to damage the plaintiff in the federal action. <u>Id.</u>

However, the procedural posture of the two actions in <u>Dalchau</u> were radically different from the ones presented here. In <u>Dalchau</u>, the court denied the defendant's request for a stay where the federal action had been filed first, over a year before a settlement was reached in a subsequent state case initially brought by a single plaintiff, who settled at the last minute on a class-wide basis. The earlier federal action had "been vigorously litigated, the parties ha[d] conducted significant class-based discovery, and [the federal court] ha[d] already conditionally certified Dalchau's FLSA claim." Noting that the federal action was "further along" and defendant pointed to no other hardship or inequity other than the need to defend the action, the court found that this "prejudice" was wholly insufficient to warrant granting a stay. <u>Id.</u>

---

<u>Id.</u> at 184. Indeed, on remand, the New York State Supreme Court granted class certification pursuant to CPLR 901 and 902. <u>Andreyeyeva v. New York Health Care Inc.</u>, No. 14309/2011, 2020 WL 2510472 (N.Y. Sup. Ct. Kings Cnty. May 15, 2020).

[17] The <u>Lutfieva</u> plaintiffs contend that Malancea's counsel has "pulled the same tactics" in two other actions. (Lutfieva 2/19/2020 Ltr. at 5, n. 8).

In considering Malancea's allegation that there was a collusive reverse auction settlement reached in this case, the Court notes that the circumstances underlying the proposed settlement in this case are unlike the cases cited by Malancea.  Unlike Dalchau, where the state case was filed by a single plaintiff after the federal class action had commenced and the state case then purported to settle on a classwide basis, here, as noted, Malancea filed her federal action after the state court action in Lutfieva was commenced.  (Lutfieva 2/19/2020 Ltr. at 1).  Also, in Dalchau, unlike here, it was the federal case that had alleged class claims and had progressed much further than the state case, including rulings by the court on class certification and extensive discovery. 2018 WL 1709925, at *5.

More closely analogous to this case are the circumstances that occurred in In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litigation, 99 F. Supp. 3d 288 (E.D.N.Y. 2015). There, the district court declined to address the claims of "reverse auctions," suggesting that those claims were best directed at the Justice presiding over the New York state case.  Id. at 312. Instead, the district judge addressed the first-to-file rule and noted: "'Although it is typically invoked in non-class contexts, the first-filed rule has been applied to class action suits filed by different plaintiff classes against the same defendant.'"  Id. at 309 (quoting Bukhari v. Deloitte & Touche LLP, No. 12 CV 4290, 2012 WL 5904815, at *3 (S.D.N.Y. Nov. 26, 2012)).  The court further explained: "For example, courts have applied the rule to parallel class actions filed against the same defendant and involving claims based, at least in substantial part, on the same law."  Id.   In examining the claims before him, the court concluded that "the competing lawsuits s[ought] almost identical relief against the same entities and have both been filed in New York, albeit one in state court and the other in federal court.  Under these circumstances, application of the first-filed rule is appropriate."  Id.  Although the judge declined to stay discovery in In re

HSBC, he held in abeyance the federal class certification motion "pending resolution of the class

action settlement approval process in the State Court Action."  In re HSBC, 99 F. Supp. 3d at

316.  Although this Court does not express an opinion on the first-filed rule here, the same

reasoning applies when considering both the questions of which court should address the claims

of reverse auction and whether this Court should stay this case under Colorado River.

Therefore, having considered the arguments raised by all of the parties in this case and in

Lutfieva, this Court concludes that there was no collusive reverse auction settlement, and, in any

event, this is an issue that is better raised before the state court in analyzing the fairness of the

proposed settlement in Lutfieva.  See id. at 312.  Although Judge Posner, writing for the Panel in

Reynolds, confirmed that district judges must "protect the members of a class in class action

litigation from lawyers for the class who may, in derogation of their professional and fiduciary

obligations, place their pecuniary self-interest ahead of that of the class," id.  279-280, it is not

clear in the instant case that the state court settlement was a reverse auction.  While the

settlement class is significantly broader than the original class in Lutfieva, that alone does not

suggest that there was any improper collusion between the attorneys in Lutfieva.  Indeed, the fact

that the proposed settlement was negotiated with the assistance of an experienced, reputable

mediator further belies any suggestion of a reverse auction.  Finally, to the extent that the claims

in Lutfieva overlap with Ms. Malancea's original claim for failure to pay overtime for in-service

training, they represent only a very small percentage of the entire state court settlement, which

covers numerous alleged wage and hour violations only added recently to the Malancea

Amended Complaint, further supporting defendant's denial of any attempt to undercut plaintiff

or avoid liability in this federal action.

Based on the <u>Colorado River</u> doctrine and the factors that must be considered in determining whether abstention is appropriate, the Court finds that the two actions are parallel, that <u>Lutfieva</u> was filed first, and it has progressed further than this federal action.  Moreover, staying this federal action will not only avoid piecemeal litigation and inconsistent decisions, but the procedures in the state court for reviewing the fairness of the proposed settlement are adequate to protect plaintiff's federal rights.  Thus, this Court recommends granting defendant's motion for a stay pending the outcome of the state court review of the fairness of the settlement.

B.  <u>Plaintiff's Renewed Motion for Collective Action Certification and Discovery Issues</u>

On December 20, 2019, plaintiff Malancea filed a renewed motion for certification of a collective class based on the information obtained during the course of the discovery ordered by this Court.  Thereafter, on January 16, 2020 and January 22, 2020, plaintiff filed two letters raising a number of discovery disputes.  On March 5, 2020, defendant filed a motion to quash two subpoenas and, on March 16, 2020, defendant sought a motion for a protective order.

Given the Court's recommendation that a stay of the proceedings be entered, pending the state court review of the proposed settlement, and given the fact that many of the same issues raised in these discovery motions have also been raised in the state court, the Court recommends denying the outstanding motion for collective action certification, without prejudice to renew in the event that the state court rejects the proposed settlement.  The Court also recommends denying the motion to judicially estop defendants from asserting arguments based on the <u>Lutfieva</u> case.  Finally, the Court recommends granting the motion to quash the subpoenas and for a protective order in light of the stay, but without prejudice to revisit if the state court declines to approve the settlement in <u>Lutfieva</u>.  If the state court fails to approve the settlement, the Court recommends lifting the stay to allow discovery to once again proceed.  The parties

could then be allowed to pursue the discovery subpoenas and refile their respective motions at that time.

CONCLUSION

For the reasons set forth above, the Court respectfully recommends granting the motion to stay this case pending the outcome of the state court review of the fairness of the settlement. The Court further recommends denying plaintiff's renewed motion for certification of a collective class, without prejudice to renew in the event that the state court rejects the proposed settlement. At that time, the stay will be lifted in this case, and discovery will proceed.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      November 10, 2020

                                 /s/ Cheryl L. Pollak
                                 Cheryl L. Pollak
                                 Chief United States Magistrate Judge
                                 Eastern District of New York